**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 07a0124n.06**
**Filed: February 15, 2007**

**Nos. 05-4328 & 06-3287**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MANHAL ABLAHAD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW FROM |
| v. | ) | AN ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ALBERTO GONZALES, | ) | |
| ATTORNEY GENERAL | ) | |
| | ) | |
| Respondent. | ) | |

**Before: SUHRHEINRICH, GIBBONS, and COOK, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge**. In this immigration case Manhal Ablahad

petitions for review of the denial of two separate motions to reopen. Ablahad cites inaccuracies in

the notices sent to him and asserts that the Immigration Judge ("IJ") erred in denying his original

motion to reopen and the Board of Immigration Appeals ("BIA") abused its discretion in denying

his second motion to reopen. Because the decisions are supported by the record and Ablahad fails

to show how any errors resulted in prejudice to his case, we deny both petitions for review.

I.

Ablahad is a native and citizen of Iraq. Ablahad was admitted to the United States as a

refugee on February 23, 1994, and became a lawful permanent resident of the United States on

1

March 22, 1995. On September 12, 1996, Ablahad pled guilty to malicious destruction of property in Michigan. On October 2, 1997, the Immigration and Naturalization Service ("INS") served Ablahad with a notice to appear charging him with being an alien subject to removal from the United States pursuant to § 237(a)(2)(A)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(i), because he had been "convicted of a crime involving moral turpitude committed within five years after admission for which a sentence of one year or longer may be imposed." The notice was sent to Ablahad by certified mail, return receipt requested. Ablahad's alien registration number was incorrect by one digit, but the information contained in the notice to appear was otherwise accurate. Ablahad signed for the notice to appear on October 6, 1997.

On May 27, 1998, the immigration court sent Ablahad, via regular mail, notice of his removal hearing, informing him that the hearing was scheduled for December 16, 1998. Ablahad failed to appear at his removal hearing, and the IJ ordered him removed *in absentia*. The removal order also used the incorrect alien registration number. In the period between this order and the events giving rise to this appeal, Ablahad made several trips to Canada and was readmitted as a permanent resident.

Ablahad filed an application for naturalization in early 2001 and appeared for an examination of his application on July 22, 2003. The INS informed Ablahad that examination of his application revealed that he was ineligible for naturalization because there was a final order of deportation in his file. The INS denial also noted that a notice to appear was issued to Ablahad on May 27, 1998, regarding his December 16, 1998, deportation hearing and that Ablahad had failed to appear. Approximately fourteen months later, on September 21, 2004, Ablahad filed a motion to reopen his

2

removal proceedings before the IJ and to rescind the *in absentia* deportation order. In his motion, Ablahad claimed he "had no knowledge of the deportation proceedings allegedly initiated against him on May [sic] of 1998" and that he "d[id] not recall receiving his notice to appear dated May 27, 1998 or the notice of hearing of December 16, 1998." He further stated that he did not recall signing any documents to that effect or receiving certified mail requesting his presence.[1]

On October 28, 2004, the IJ denied Ablahad's motion to reopen. The caption of the IJ's opinion reads "Manhal Abhlaad-Soro," rather than "Manhal Ablahad,"[2] and misstates the dates of the notices sent to Ablahad as well as the date of his actual hearing. The opinion otherwise addressed the thrust of Ablahad's argument. The IJ found that evidence showed that the notice was sent to the last address Ablahad provided and that someone at that address had signed for the notice. The IJ accordingly found that Ablahad could be fairly charged with receipt of the notice. The IJ noted that, pursuant to 8 C.F.R. § 1003.23(b)(4)(ii), an alien "must establish that he did not receive notice, not that he probably did not." The IJ therefore denied Ablahad's motion to reopen.

On November 26, 2004, Ablahad appealed the IJ's decision to the BIA. On September 30, 2005, the BIA affirmed without opinion the decision of the IJ denying Ablahad's motion to reopen his removal proceedings. Ablahad filed a timely petition for review of the BIA's order with this court.

---

[1]Ablahad later acknowledged that he did receive both notices.

[2]Ablahad asserts that the name "Soro" does not appear in the record. In fact, the July 22, 2003, INS decision that Ablahad received in connection with his naturalization interview, of which Ablahad acknowledges receipt, states his name as "Manhal Ablahad Soro." Ablahad's own September 21, 2004, motion to reopen also states his name as "Ablahad-Soro, Manhal."

3

Ablahad also filed a motion to reopen the BIA's September 30, 2005, decision. In this motion he admitted for the first time that he had received both the notice to appear and the notice of hearing. Ablahad contended that although he had in fact received the notice of hearing, he later lost the notice. Once he lost the notice, Ablahad maintained that it "was impossible for him to check on the status of his proceedings to learn when his next hearing was scheduled and whether a removal order was entered." Ablahad did not contend that he actually tried to contact the immigration court, or any other official, only that it would have been impossible if he had inquired about the hearing and used only his actual alien registration number, not the number listed on his notices. Ablahad claimed that he did not learn of his deportation order until his application for naturalization was denied.

The BIA denied Ablahad's second motion to reopen in a January 30, 2006, opinion. The BIA found that the initial motion to reopen the *in absentia* order was untimely filed, as Ablahad had conceded that he received notice of the hearing but allowed six years to elapse between the removal order and his filing of the motion to reopen.[3] The BIA also found that, in light of Ablahad's travels to Canada, both of his motions to reopen were barred by 8 C.F.R. §§ 1003.2(d) and 1003.23(b)(1), which forbid a person who is the subject of a deportation proceeding from making a motion to

---

[3]A motion to reopen an *in absentia* order must be filed within 180 days unless the respondent did not receive notice in accordance with § 239(a)(1) or (2) of the Immigration and Nationality Act. *See* 8 C.F.R. §§ 1003.2(c)(3), 1003.23(b)(4)(ii). The BIA addressed Ablahad's contention that he was injured in an assault and was briefly hospitalized but did not find that this sufficiently explained the nearly six-year delay in filing a motion to reopen. The BIA noted that Ablahad was able to go to work immediately after the injury. Further, the court found that even in the most generous understanding of the events, Ablahad learned of the IJ's order of removal by July 22, 2003. Ablahad's initial motion to reopen was not filed until September 21, 2004, approximately 14 months later.

4

reopen subsequent to his or her departure from the United States. The BIA noted that because Ablahad "received both the Notice to Appear and the Hearing Notice, he was aware or had access to the alien registration number contained in both of those documents and, therefore, could have used the registration number enumerated on either document to check the status of his case."

The BIA concluded that Ablahad failed to use due diligence to discover the status of his proceedings and failed to identify prejudice resulting from any errors contained in the notice to appear or in the hearing notice. Accordingly, the BIA denied Ablahad's motion to reopen. Ablahad filed a second timely petition for review of this denial to reopen with this court.

## II.

This court reviews motions to reopen for an abuse of discretion. *INS v. Abudu*, 485 U.S. 94, 106 (1988); *Denko v. INS*, 351 F.3d 717, 723 (6th Cir. 2003). "A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). When considering whether the BIA abused its discretion, this court must decide whether the denial of the motion to reopen "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982). The Supreme Court has found that motions to reopen are particularly disfavored in a deportation proceeding, "where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *INS v. Doherty*, 502 U.S. 314, 323 (1992).

III.

We first review the BIA's September 30, 2005, decision affirming the IJ's denial of Ablahad's motion to reopen. When the BIA affirms the IJ without opinion, this court reviews the IJ's decision as the final administrative order. *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004). Ablahad asserts that the IJ erred in denying his motion to rescind the *in absentia* order because the errors in the notice made it impossible for him to obtain information about the status of his case and thus deprived him of "proper notice" of his removal proceedings.

An alien must be provided written notice of a removal proceeding in person or, if personal service is not practicable, through service by mail to the alien or the alien's counsel of record. 8 U.S.C. § 1229(a)(1). The notice must contain certain required elements, including the nature of the proceedings, the conduct alleged to be in violation of the law, and the date, time, and location of the proceedings. *Id.* § 1229(a)(1)(A)-(G). If an alien is provided proper written notice of a removal proceeding and still fails to attend, the IJ must enter an *in absentia* order of removal if the agency establishes "by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable [as further defined]." *Id.* § 1229a(b)(5)(A). An *in absentia* order so entered may be rescinded only if the alien moves to reopen the case and demonstrates the he or she either did not receive notice of the removal hearing or failed to appear because of exceptional circumstances. *Id.* § 1229a(b)(5)(C). The motion to reopen must be filed within 180 days of the date of the order of removal unless the alien demonstrates that he or she did not receive notice of the hearing. *Id.* "Exceptional circumstances" include battery or extreme cruelty to the alien, serious illness of the alien, and serious illness or death of the spouse, child, or parent of the alien, but do not

7

include "less compelling circumstances . . . beyond the control of the alien." *Id.* § 1229a(e)(1). Review of an *in absentia* order is confined to (i) the validity of the notice provided to the alien; (ii) the reasons for the alien's not attending the proceeding, and (iii) whether the alien is removable. *Id.* § 1229a(b)(5)(D).

Ablahad's 2004 motion to reopen focused on the validity of the notice of the removal proceedings. An alien bears the burden of demonstrating lack of notice. 8 U.S.C. § 1229a(b)(5)(C)(ii). Ablahad asserted that he "d[id] not recall receiving the notice to appear dated May 27, 1998 or the notice of hearing of December 16, 1998. He does not recall signing any documents to that effect or receiving certified mail requiring his presence." The IJ found Ablahad's assertion was contradicted by the record. Ablahad was served the notice to appear by certified mail, return receipt requested, on October 6, 1997. The notice to appear listed Ablahad's address as 19180 Havana Street, Detroit, Michigan, and there is no indication that Ablahad provided a change of address at any time. Further, Ablahad signed the return receipt as having received the document at the address provided in the notice to appear. The notice to appear included Ablahad's personal background and stated that his 1996 conviction made him removable from the United States pursuant to § 237(a)(2)(A)(i) of the INA. The notice of hearing included the time, date, and location of Ablahad's scheduled hearing.

Ablahad's sole support for his motion to reopen was his bald assertion that he "d[id] not recall receiving the notice[s]." This conclusory statement alone cannot support a finding that the BIA abused its discretion in affirming the IJ's denial of the motion to reopen. *See, e.g., Gurung v. Ashcroft*, 371 F.3d 718, 722 (10th Cir. 2004) ("A petitioner who fails to submit documentary evidence

in support of his motion to reopen, and instead merely alleges that he had not received proper notice, does not demonstrate lack of notice, as the statute requires") (internal quotation omitted).  Because Ablahad has failed to carry his burden, and because the IJ's decision is supported by the record, we affirm the BIA's September 30, 2005, decision.

IV.

Ablahad also seeks review of the BIA's January 30, 2006, denial of his motion to reopen the BIA's September 30, 2005, decision. The BIA found Ablahad's initial motion to reopen was untimely filed, as it was due on or about June 14, 1999, but was not filed until September 21, 2004.  Even in the most generous interpretation, Ablahad knew of the IJ's order of removal by July 22, 2003.  As a consequence, regardless of any of the circumstances Ablahad has alleged and any possibility of equitable tolling, his initial motion was untimely filed.[4]  Although a motion to reopen an *in absentia* removal order may be filed at any time when an alien demonstrates that he did not receive notice, 8 U.S.C. § 1229a(b)(5)(C), Ablahad acknowledged in his November 2005 motion to reopen that he had in fact received both the notice to appear and the notice of hearing.  Accordingly, the BIA's conclusion that Ablahad's September 2004 motion to reopen was untimely was correct.[5]  *See Gurung*, 371 F.3d

---

[4]Ablahad was briefly hospitalized as a result of an assault in December 1998.  Hospital records indicate that Ablahad was nevertheless able to go to work immediately after being injured.  As noted by the BIA, this hospitalization cannot "sufficiently explain[] the 5 year and 9 month period between his injury and his initial motion to reopen."

[5]The BIA also addressed the inaccuracies in the notice to appear.  The BIA noted that any deficiencies in the notice, explicitly including the alien's registration number, do not afford an alien any substantive or procedural rights.  *See* 8 C.F.R. § 1003.15(c).  The BIA found that Ablahad failed to use due diligence to discover the status of his case and also failed to identify any prejudice resulting from any errors contained in the notices he received.  These findings all find support in the record.

at 722 (finding in the context of a motion to reopen that the focus should be on whether "the alien actually received notice, rather than on whether the INS sent sufficient notice to the proper address.") We therefore hold that the BIA's January 30, 2006, denial of Ablahad's motion to reopen was not an abuse of discretion.[6]

V.

Ablahad also contends that the IJ and BIA denied him due process by failing to reopen his removal proceeding. Ablahad asserts that "[d]ue process requires the IJ to provide an alien with notice of the proceedings and an opportunity to be heard." The immigration court, however, provided Ablahad with written notification, mailed to his address of record, and Ablahad acknowledged receipt of both notices. Ablahad also contends that the BIA violated his due process rights when it summarily affirmed the IJ's decision without an opinion. This court has found directly to the contrary. *Denko*, 351 F.3d at 730 ("[I]t is not a due process violation for the BIA to affirm the IJ's decision without issuing an opinion") (internal quotation marks omitted). Although the IJ decision did include errors in the dates of record, it is clear from the opinion that the IJ was referring to the facts and circumstances of Ablahad's case, and the ultimate conclusion of the court was accurate.

Ablahad also fails to show that any inaccuracies in the IJ's decision resulted in substantial prejudice to his case. *See Gishta v. Gonzales*, 404 F.3d 972, 979 (6th Cir. 2005) ("To prevail on a due process challenge to deportation proceedings, an alien must show error and substantial prejudice. A

---

[6]Ablahad's motions to reopen were also barred by 8 C.F.R. §§ 1003.2(d) and 1003.23(b)(1). Ablahad acknowledges that he traveled to Canada on multiple occasions after the entry of his removal order. As a consequence, the BIA was correct in holding that his motions to reopen were procedurally barred. *See* 8 C.F.R. §§ 1003.2(d) & 1003.23(b)(1).

showing of prejudice is essentially a demonstration that the alleged violation affected the outcome of the proceedings; we will not presume prejudice") (internal quotation mark omitted). This is particularly true in light of Ablahad's later acknowledgment that the he did in fact receive both the notice to appear and the notice of hearing.

Because it is not a due process violation for the BIA to affirm an IJ's decision without opinion and because Ablahad has failed to show how any errors resulted in prejudice to his case, Ablahad was not denied due process.

VI.

For the foregoing reasons, we affirm the decisions of the BIA and deny the petitions for review.