**Marcie M. KEGODE, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

**No. 01–3865.**

United States Court of Appeals, Sixth Circuit.

April 22, 2003.

Before RYAN, BATCHELDER and LAY,* Circuit Judges.

BATCHELDER, Circuit Judge.

Marcie M. Kegode ("Kegode"), a citizen of Kenya, petitions for review of a Board of Immigration Appeals ("BIA") order affirming the decision of the Immigration Judge ("IJ") denying her motion to reopen removal proceedings. Because we conclude that Kegode received sufficient notice of the proceedings to satisfy both the requirements of due process and the requirements of the relevant statute, we will affirm the order of the BIA.

## BACKGROUND

Marcie Kegode legally entered the United States in 1991 on an F–1 status to attend Wilmington College. In 1997, after leaving Wilmington, Kegode filed an asylum request with the assistance of attorney Chris Asher of Washington, D.C. After the INS denied her initial request, she renewed her request for asylum in March of 1999.

In February of 1999, the Immigration and Naturalization Service ("INS") issued Kegode a Notice to Appear charging her with being removable under Section 237(a)(1)(C)(i) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(1)(C)(i). Kegode, through her counsel, conceded deportability and sought asylum and withholding of deportation. The first three master calendar hearings were conducted via telephone. At the first, Kegode, Asher and the INS all appeared by phone from Cincinnati. During the next two hearings, however, the INS agent and Kegode appeared from Cincinnati but Asher participated from Washington, D.C. During the third hearing, which was held on April 6, 2000, the IJ complained that the telephone connection with Cincinnati was "terrible." At the end of that hearing, the IJ and Asher set June 22, 2000, as the date for the fourth hearing, and the IJ instructed Asher to "make sure [his] client's in Cincinnati" for the June 22, 2000, hearing and to "advise her of the consequences of not appearing." Kegode claims that due to the poor phone connection, she was un-

---

* The Honorable Donald P. Lay, Circuit Judge for the United States Court of Appeals, Eighth Circuit, sitting by designation.

aware that during the course of the third hearing, the IJ set the fourth hearing date.

Although the INS maintains that the agency sent a reminder letter to Chris Asher, it appears that Asher never made contact with Kegode regarding the fourth hearing. In a letter to Kegode's current counsel, Asher indicated that he was unable to contact Kegode because she claimed she was moving and could only be reached at her cell phone. According to Asher, all attempts to reach her at her cell phone number were unsuccessful. Kegode, on the other hand, claims she attempted on several occasions to learn from Asher the status of her case, including engaging in a phone conversation with him on April 9, 2000, during which, she says, Asher became upset over fees and the fact that Kegode "informed him that [she] did not trust him." When Kegode failed to appear at the fourth master calender hearing, the IJ found Kegode, *in absentia*, removable as charged and ordered her deported to Kenya.

In December of 2000, claiming she had received ineffective assistance of counsel because she was never informed of the fourth hearing date, Kegode filed a motion to reopen the proceedings. The INS opposed the motion, arguing that Kegode had failed to comply with the heightened procedural requirements for claiming ineffective assistance of counsel. *See Huico-chea–Gomez v. INS*, 237 F.3d 696, 699 (6th Cir.2001) ("[A]n alien claiming ineffective assistance of counsel must submit an affidavit describing the agreement for representation entered into with former counsel, inform former counsel of the charge for the purpose of allowing him to respond to the complaints being made against him, and report whether a complaint has been filed with the appropriate disciplinary authorities.). The IJ denied the motion for the reasons indicated in the INS's re-

sponse and found that Kegode had received sufficient notice because she was present at the third master calender hearing when the fourth hearing date was set.

On appeal to the BIA, Kegode argued she had never received sufficient notice and by proceeding against her *in absentia*, the IJ had violated her due process rights. The BIA found "no reason to disturb the Immigration Judge's decision" and accepted the judge's determination that Kegode received sufficient notice. Kegode's timely appeal to this court followed.

## ANALYSIS

### A. Standard of Review

The decision to reopen a removal proceeding is discretionary and we review the BIA's denial of such a motion for an abuse of discretion. *INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992); *Balani v. INS*, 669 F.2d 1157, 1158, 1160–61 (6th Cir.1982). "In determining whether the Board abused its discretion, this Court must decide whether the denial of Petitioner's motion to reopen deportation proceedings was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Balani*, 669 F.2d at 1161. Since the BIA adopted the reasoning of the IJ, we will review the IJ's decision when determining whether the BIA abused its discretion. *See Mikhael v. INS*, 115 F.3d 299, 302 (5th Cir.1997) ("We have authority to review only an order of the BIA, not the IJ, unless the IJ's decision has some impact on the BIA's decision."). We review *de novo* "an alleged due process violation based upon the manner in which an [immigration judge] conducts a deportation hearing." *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir.1998).

## B. Abuse of Discretion

For a removal proceeding under 8 U.S.C. § 1229a, the INS must provide the alien written notice in person or through service by mail to the alien or "to the alien's counsel of record" if personal service is impractical. 8 U.S.C. § 1229(a)(1). Besides informing the alien of the nature and timing of the proceedings, the notice must also explain the consequences for failing to appear. *Ibid.* If the alien fails to appear after written notice has been provided to the alien or the alien's counsel of record, the IJ shall order the alien removed *in absentia* "if the Service establishes by clear, unequivocal, and convincing evidence that the written notice was so provided and that the alien is removable." 8 U.S.C. § 1229a(b)(5)(A). The IJ may rescind the order if the alien files a motion to reopen (i) within 180 days of the removal order and shows exceptional circumstances or (ii) at any time "if the alien demonstrates that the alien did not receive notice in accordance with paragraph (1) or (2) of section 1229(a) of this title...." 8 U.S.C. § 1229a(b)(5)(C).

■ By adopting the IJ's findings that the INS mailed a notice of appearance to Asher, as Kegode's attorney, and that Kegode herself was present during the teleconference setting the June 22, 2000, trial date, the BIA provided a rational explanation for its refusal to overturn the IJ's decision. The BIA neither departed from established polices nor rested its decision on impermissible discrimination, *Balani*, 669 F.2d at 1161, but enforced the clear language of the Immigration and Nationality Act. Therefore, the BIA did not abuse its discretion in affirming the order not to reopen the removal proceedings.

## C. Due Process

Aliens in immigration proceedings receive due process protections and fair hearing guarantees, including the right to have notice. *Zadvydas v. Ashcroft*, 533 U.S. 678, 694, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (describing how "the Due Process Clause protects an alien subject to a final order of deportation"); *Huicochea–Gomez*, 237 F.3d at 699. The nature of the protections depends upon the status and circumstance of the alien. *Landon v. Plasencia*, 459 U.S. 21, 32–33, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). To satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust* Co., 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Chernin v. Welchans*, 844 F.2d 322, 328 (6th Cir.1988).

The Ninth Circuit considered a case similar to Kegode's in *Farhoud v. INS*, 122 F.3d 794 (9th Cir.1997). In *Farhoud*, the INS mailed a notice of hearing to the petitioner via certified mail to the address on record for the alien. While the petitioner conceded that he was living at the address at the time, he claimed he never actually received the notice of hearing. *Id.* at 796. The IJ ordered Farhoud, *in absentia*, deported to his home country. The court concluded: "An alien does not have to actually receive notice of a deportation hearing in order for the requirements of due process to be satisfied. Rather, due process is satisfied if service is conducted in a manner reasonably calculated to ensure that notice reaches the alien." *Ibid* (internal quotation marks and citations omitted).

In another Ninth Circuit case, the petitioners claimed they received inadequate notice even though the INS personally served the written notice on petitioners' counsel. *Garcia v. INS*, 222 F.3d 1208, 1209 (9th Cir.2000). The court, reiterating

the longstanding principle that a party is bound by the actions of his lawyer and a party "is considered to have notice of all facts, notice of which can be charged upon the attorney," *ibid* (citing *Link v. Wabash R.R.*, 370 U.S. 626, 634, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)), found that the INS satisfied due process.

■ Although Kegode claims in her brief that the INS never sent Asher a written notice and that her INS file contains no indication that notice was sent, the record before us contains a letter dated April 6, 2000, and addressed to Asher that provides notice of the June 22, 2000, hearing. Providing service to an alien's lawyer satisfies the requirement of 8 U.S.C. § 1229(a)(1) and is "reasonably calculated to ensure that notice reaches the alien." *Farhoud*, 122 F.3d at 796. Further, the IJ and the BIA concluded that Kegode's presence at the April 6, 2000, hearing–when the June 22, 2000, date was set–provided sufficient notice of the fourth master hearing. While the transcript of the April 6, 2000, telephone hearing reflects that the IJ had difficulty hearing the parties, nothing in the transcript indicates that Kegode or the INS representative in Cincinnati had difficulty hearing the IJ or that they missed the discussion of the date for the fourth hearing. Accordingly, we agree with the BIA and IJ that Kegode was not denied due process.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the BIA.